23-1131. Mr. Smick? Thank you, Your Honor, members of the Court, and may it please the Court, I would like to reserve three minutes for rebuttal, if I could, please. That's fine. You just have to watch the clock. Thank you, Your Honor. We are here on an insurance coverage dispute. As the Federal Circuit Court of Appeals, sitting in Illinois, we get more than our share of coverage disputes here. And as a result, there is quite a body of case law here in Illinois on various issues. But we come before the Court today with a set of unique facts. We have an architect and his firm being sued in first the Northern District of Iowa, and now in Iowa State Court, with allegations in the complaint generally of a design defect. But when the underlying complaint gets into the specifics, it alleges a laundry list of construction defects. Further making this case unique is the fact that in most cases, architects will carry malpractice insurance, for lack of a better word, errors and omissions coverage. And in turn, the Commercial General Liability Carrier, like the Applee in this case, Acuity, will exclude coverage for professional services. We don't have that here. I know you don't have the exclusion, but do you also not have the malpractice coverage on the other side? There is no malpractice coverage in this case. My clients did not maintain their malpractice insurance. So they have come to their Commercial General Liability Carrier, Acuity, saying please cover us. Please cover us under the insuring agreement that says we will pay all sums that the insured becomes legally obligated to pay because of property damage that is caused by an occurrence. The claims are submitted to Acuity. Acuity responds, no. This is not covered under our Commercial General Liability CGL policies because in Illinois, one's own work product, faulty workmanship, is not an occurrence. The difficulty with Acuity's argument is the case law that they cite for that proposition deals with contractors, the builders themselves. Well, you did start with the idea that this is a unique set of facts, but is it? We do have Illinois case law that deals with architecture firms like Cornice and Rose. Take, for example, Pekin Insurance versus Richard Marker Associates. There we've got an architectural firm, and they were sued for breach of their architectural services agreement, but also failure to design proper location, installation of plumbing pipes, failure to insulate exterior facing areas, breach of the construction contract, etc., etc., etc. They went to their insurer, just like your clients have done. What the Illinois Court of Appeals did was look to the Commercial General Liability Contract and find that this is a faulty workmanship issue. There's got to be damage to something other than just an allegation that the building itself was defective. They're damaged to furniture. Where's the uniqueness if we have already sources like Pekin that tell us what to do, even if an architecture firm is involved? The uniqueness of these facts, Your Honor, is that we have an insured being sued again under a very general allegation of architectural malpractice, a design defect, if you will. But then the complaint goes on to allege all sorts of construction defects, walls out of plumb, improper flashing, things of that nature. And somehow, someway, this plaintiff is going to try and connect those dots between Cornice and Rose's design and the actual construction of the building. They claim the building was incomplete. Just to put a finer point on it, the counterclaim is the services that you were to provide were designing the building in Iowa and overseeing its construction. They do claim some oversight of the construction, but really not, because they attach, and the underlying complaint actually alleges a breach of contract, especially in the Iowa State court case. They allege a breach of contract, and they attach that contract. You agree that it's their designing the building, as well as overseeing its construction. How can design and construction defects fall outside the scope? Well, that was my point, Your Honor. In the contract that my client signed with the developer that eventually went belly up, unfortunately, but that said that Cornice and Rose has no responsibility for construction. That is in the contract document. That is cited in our briefing. And doesn't that same contract, though, give you the responsibility of overseeing construction? It does.  It says you are to design the building, you are to provide plans, but you are supposed to provide completion documents. There are some administrative duties in the contract, but we submit to this court that when one reads the provisions of the actual contract, it says you, Cornice and Rose, have no responsibility when it comes to the construction. When it comes to the construction, does the contract say that you are to oversee the construction? It does not. All right. So in the 30 seconds I have left before my rebuttal time kicks in, I would like to mention that really the one case we have that approaches analogous facts is this court's 1997 ruling in Prisco Sturm Architects. There, this court did a proper coverage analysis. That case had a subjective clause, though, that this one doesn't. It does, but this court, as the district court did below, undertook a proper coverage analysis, and it began with the definition of an occurrence, and it found that because the architect could not reasonably foresee the construction defects that ultimately popped up, the definition of occurrence and property damage were satisfied. So with my two and a half minutes of rebuttal time, if I may stand down, and I'll make my final request to the court. I do need to follow up on the determination regarding overseeing the construction. And so the contract at item three, and that's found in the docket 1-8, it says that Cornice is to evaluate the project regularly to become familiar with the progress and quality of the work completed, and to endeavor to guard the owner against the defects and deficiencies in the work. And so that language is where I'm pulling the question, were you obligated to oversee its construction? Again, we submit that the contract does not require oversight because it does say the architect shall not have control over charges. No, I want to confirm that that language that I just pulled, that that does come from the contract? I will check that as counsel makes his argument. All right, if you will check it's docket 1-8 paragraph three of the contract. It's also, I believe, included in the counterclaim. Thank you. Thank you, Mr. Schmick. Mr. Postol. Thank you, Your Honor. May it please the court, Joseph Postol for Acuity Insurance. So I think, Judge Jackson, you came up with the key here. There is nothing unique about this case. There is nothing unique about an architect seeking coverage under a CGL policy for construction defects. Granted, the body of case law on insurance coverage for defective construction usually involves a contractor, but not always. As Judge Jackson pointed out, the Pekin versus Richard Marker case involved an architect. The Viking case, which was discussed some length in the briefs, indicated that it involved a construction manager, which is also not actively involved in the, not directly involved in the construction. So there's nothing about the role of an architect that sort of exempts Cornice and Rose from the ordinary principles of determining insurance coverage. Their policy still provides what all the policies in those other cases provided, and that is you're covered for property damage, liability for property damage caused by an occurrence. And is that where the disagreement is as to what context, whether or not this qualified as an occurrence or if there was property damage? Yes, that is where the, that is the ground on which the dispute is being conducted. Is there an occurrence and did it cause property damage? So, again, the fact that you have an architect here and that there's no professional services exclusion in the policy, that doesn't change the fact that you have to have property damage caused by an occurrence. So, as far as occurrence is concerned, they rely exclusively on this Prisco-Serena-Stern Architects case, which applied the wrong standard. The Viking Court declined to follow Prisco for two reasons, or for one reason, and other courts have given an additional reason. So the first reason is that- Excuse me, sir. Yes. I want to talk about that. Do we, you are correct about Viking, but Prisco is our circuit law. You know, it's obviously a case we might look to in resolving this dispute. Do we need to do something about that to find for you? Not necessarily. I think you can recognize that in the Nautilus case, the Seventh Circuit applied a different standard for determining occurrence than the court in Prisco did. I'm not sure about that, though. Nautilus applied an objective test. Prisco applied a subjective test. In the contract in Prisco, there was a subjective element intended. In Nautilus, there was not, and here there is not. Why does that not by itself distinguish Prisco? Well, I don't think the Nautilus court even mentioned what you just mentioned, Judge. I think the debate is over whether the different standards are, on the one hand, the Prisco standard is, the court said, the complaint doesn't allege that Prisco intended or expected for the school to have to pay for work that was done improperly. And because there was no allegation that they intended or expected it, therefore it's an occurrence. We don't have that here, though. There's no requirement in this contract regarding intended or expected. That's subjective. I understand, but that was the language, that was the standard that the court applied to determine whether there's an occurrence. In Prisco. Correct. Doesn't that distinguish Prisco from this case? Well, arguably, yes, because this case involves the definition of occurrence as an accident, including prolonged or repeated exposure to substantially similar conditions. Period. Period. Yes, you're right. So the occurrence definition formerly had those additional words, neither expected nor intended, from the standpoint of the insured. The exclusion no longer has those words. It's just a question of whether it's accidental. And to determine whether it's accidental, the test is the one employed by the Nautilus Court, by the Viking Court, by the Stone Ridge Court, by virtually every court in the last 20 years. And that is whether the damage was the natural and ordinary consequence of the defectively performed work. So that's why Prisco does not control this case. What does control this case are the Illinois Appellate Court cases, which the Nautilus Court certainly seemed to adopt in its holding. The Nautilus Court, for example, let me check my notes. The Nautilus Court cited Stone Ridge and Viking, the Illinois Appellate Court cases, in adopting the rule that the natural and ordinary consequences of an act do not constitute an accident. And damages that are the natural and ordinary consequence of faulty workmanship do not constitute an occurrence or an accident. Now I understand that... I think we would have to do something with national decorating as well. Yes. So national decorating is relevant to a separate issue, and that is the sort of little exception that's been carved out to the Illinois rule that you don't have an occurrence if the defect involves the building under construction. National decorating recognizes an exception where an insured is responsible only for a part of the construction. In national decorating, it was a window ceiling contractor, subcontractor, does its work defectively, and as a result, other parts of the construction, not within its scope of work, get damaged. So the court found that's an occurrence. You don't have that here. Cornice and Rose is not responsible only for a portion of the construction. They're responsible for the entire project. Again, yes, they didn't directly do the construction work, but neither does a general contractor in most cases. They simply sub out all the work and they just superintend it. So the idea that Cornice and Rose or architects in general are in a completely different position here is just... I reject that and I ask the court to reject it. The case law on occurrence, property damage, and the difference between economic loss and damage to the property of others, this is well settled in Illinois law. There's no reason it shouldn't control this case. And for that reason, we ask the court to affirm the district court's judgment. All right. Thank you, Mr. Postol. Mr. Smick, we'll give you your two and a half minutes in rebuttal. Thank you. So with the court's permission, I'd like to address Judge Pires' question that we left off with. And indeed, the contract does say that Cornice and Rose was to become familiar with the progress and quality of the portion of the work completed to endeavor to guard the owner against defects and deficiencies in the work. But then the contract goes on to say that Cornice and Rose is not responsible for the construction manager's failure to perform the work in accordance with the requirements of the contract documents. One of the allegations we have in the underlying counterclaim and in the underlying complaint, Your Honors, is that, quite simply, the project was never finished. So that is just one example of the general contractor who is, by the way, a co-defendant in the Iowa State Court case, Hildreth and Company, not completing their work, not performing under their contract. But allow me to bring the court back to a basic premise of insurance law in the little time I have left. In Illinois, and in most cases, and in most states, the duty to defend is broader than the duty to indemnify. We've heard that so many, so many, so many times in these cases. All inferences with respect to the duty to defend are to be drawn in favor of the insurer, not the insurer. And even in Frisco, this court began its ruling by saying, torn between the desire to use common forms, which ought to lead to consistent results, and the need to tailor coverage to particular situations, the insurance industry often ends up with policies that are, to put it charitably, convoluted. Those of us who practice in this area know, construction defect, professional liability, and commercial general liability policy language, it's like a square peg in a round hole. We have to make all sorts of arguments. Courts have struggled with this language. Illinois has come up with the natural and ordinary consequences approach to property damage caused by an occurrence. And I will submit to the court, in closing, that Frisco acknowledges that rule. Frisco cited the Illinois case of Hydro Corporation, where, indeed, the natural and ordinary consequences rule was addressed. So we submit to this court that Frisco, among the very few cases, and this court's binding precedent, should have required the district court to grant Cornice and Rose's motion for judgment on the pleadings and deny Acuity's motion for judgment on the pleadings. We ask for a reversal on that basis. Thank you, Your Honor. Thank you, Counsel, and the court will stand in recess.